IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SUNDAY NWEGBO                          :        CIVIL ACTION
                                       :
        v.                             :
                                       :        NO.   12-CV-05063
COLWYN BOROUGH, et al.                 :

MEMORANDUM AND ORDER

    JACOB P. HART                                              July 3, 2013
UNITED STATES MAGISTRATE JUDGE


        Plaintiff, Sunday Nwegbo, a Councilman of Colwyn Borough, filed this action under 42

U.S.C. § 1983 against the Borough, its then police lieutenant, Wendell Reed, Councilwomen

Tonette Pray, Patrolman Clinton Craddock,  and Borough Treasurer, MacDonald Ford.   The

action stems from incidents that took place at a Borough council meeting on June 9, 2011.

Nwegbo alleges that he was unlawfully arrested and attacked by Reed and Craddock and that

these actions were in retaliation for his protected speech at the Council meeting.

        In Count I, Nwegbo alleged that all Defendants, acting under color of state law, deprived

him of his Constitutional rights including his right to be free from false arrest, false

imprisonment and excessive force.  He also alleges that they have violated his rights of freedom

of speech, substantive and procedural due process and equal protection.   Count II was a Monell

claim under 42 U.S.C 1983, but Nwegbo has since dismissed the claims against the Borough.  In

Counts III and IV, Nwegbo alleges that defendants Reed and Cradock deprived him of his Fourth

Amendment rights and used excessive force and arrested him without probable cause.  In Count

V, Nwegbo alleges that Defendants Pray and Ford violated his First Amendment rights, but he

has since dismissed the claims against Defendant Ford.  In Count VI, he brings a First

Amendment claim against all defendants for retaliation.  In his final claim under 1983, he alleges

that all defendants retaliated against him for his speech and for bringing the lawsuit and deprived

him of his First Amendment rights.  The remaining counts are all state law claims against

Defendants Reed and Cradock, as follows: assault and battery (Count VII), false arrest (Count

VIII), false imprisonment (Count IX), malicious prosecution (Count X), and civil conspiracy

(Count XI).  Currently pending are Defendant Cradock's Motion for Partial Summary Judgment

(docket entry #21) and Defendants Pray and Reed's Motion for Summary Judgment (docket

entry #23), to which Plaintiff has responded.   For the following reasons, the Court grants

Defendants motion in part, dismissing all claims against Defendant Pray and dismissing

Plaintiff's claims against Officer Craddock for malicious prosecution, violation of his First

Amendment rights and conspiracy.  As to Defendant Reed, we dismiss Plaintiff's claim of

conspiracy. [1]

I.       FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Nwegbo is an elected member of the Colwyn Borough Council and began his

elected term in January, 2010.  Tonette Pray is also an elected member of the Borough Council

and has been President of the Council since January, 2008.  Lt. Reed was the officer in charge of

the Colwyn Borough Police Department and Officer Craddock was a police officer in the

Borough.

On June 9, 2011, there was a regularly scheduled meeting of the Borough Council.  The

members of the Council and officials were sitting in a U shape with Tonette Pray, Martha

---

[1] Count I of Plaintiff's complaint includes allegations of Fourth Amendment and First Amendment rights under Section 1983, which are separately plead in other more specific counts of the Complaint, as well as reference to substantive and procedural due process and equal protection.  Plaintiff has not averred any facts on which to premise a claim of a violation of equal protection or substantive due process.  Since the other causes of action are plead separately, we will therefore dismiss Count I of Plaintiff's complaint.

Vanauken, and the solicitor at the head of the table.  To Prey's right was Mr. Ford, the engineer Eileen and Mayor Rutland and to Prey's left was Patrick Heller, Nwegbo, Mr. Booker and Chief Reed at the end of the table.  Id. at 19-20.  Lt. Reed was at the meeting in his official capacity and Officer Craddock was off duty and in the audience.  During the meeting, Borough Treasurer, MacDonald Ford, was giving a report to Council. While he was giving his report Nwegbo and Ford exchanged words and the meeting was ended abruptly.

According to Nwegbo, Ford began reading information accusing former council members of taking loans and not accounting for them.  Nwegbo interrupted him and told him to stop reading because the borough was already being sued and he was putting the borough at risk. Nwegbo dep at 16:20-17:4.   Nwegbo stated that Ford "made a statement such tell me – that he was just rude, implying, said tell me to shut up.  If you know you're the man, tell me to shut up. And I said, "Mr. Ford, can you shut and sit down.'"   Nwegbo stated that at that point Ford jumped up from where he was sitting and lunged towards him.  He went past Prey and the solicitor stood and used his hands to shield Nwegbo.  Id. at 20.

Nwegbo claims that he went to Reed and told him that Ford was attempting to hurt an elected official.  He alleges that Tonette Pray gave hand signals telling Ford to leave the building.  Ford left the building after Reed walked with him, but Reed turned around and came back.  Id. at 22.  Nwegbo claims that Reed grabbed him and flipped him so he fell on the floor. After getting up, he returned to his seat.  When he was returning to his seat, Cradock charged from the audience where he was sitting, grabbed him and threw him on an audience chair.  He claims that Cradock was yelling "They said you're under arrest" and picked him up and slammed him on the windowsill.  He claims that he fell on the floor a second time and that is when they

3

started beating him.  Nwegbo states that he thinks Cradock punched him in the head and they were kicking him in the ribs.  Id. at 24-25.  He testified that he never attempted to get away from Reed and did not fight him.  Nwegbo testified that Pray did nothing and did not touch him.  Id. at 27.  He recalls that Cradock was on top of him with one knee on his ribs.  Then, Officer Trevor Parham came in and handcuffed him and took him to the police station.  He remained handcuffed at the station until he received a citation, which he refused to sign.  He had a bruise above his left eye, his shoulders were hurting and he had sharp pains in his ribs.  When he went outside, he was limping and Officer Drucket asked him if he was ok.  He asked for an ambulance and was transported to Fitgerald Mercy Hospital where he was treated for his injuries.

## II. STANDARD OF REVIEW

 Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Williams v. Borough of West Chester, 891 F.2d 458, 463-464 (3d Cir. 1989).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderso v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  For an issue to be "genuine", a reasonable fact finder must be able to return a verdict (or render a decision) in favor of the non-moving party.  Id.  On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative.  Brewer v. Quaker State Oil Refining Co., 72 F.3d 326, 331 (3d Cir. 1995).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most

4

favorable to the non-moving party.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962); <u>Tigg Corp. v. Dow Corning Corp.</u>, 822 F.2d 358, 361 (3d Cir. 1987); <u>Baker v. Lukens Steel Co.</u>, 793 F.2d 509, 511 (3d Cir. 1986).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255.

Notably, however, Rule 56(e) sets forth the burden of the nonmoving party as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule must set forth the specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).  <u>See</u> <u>Roa v. City of Bethlehem</u>, 782 F. Supp. 1008, 1014 (E.D. Pa. 1991) (a party resisting a motion for summary judgment must specifically identify evidence of record which supports her claim and upon which a verdict in her favor may be based.)  With respect to an issue on which the non-moving party has the burden of proof, the burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 325.

II.     <u>DISCUSSION</u>

<u>Section 1983</u>

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  <u>West v. Atkins</u>, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254 - 2255 (1988).  Section 1983 does not provide substantive rights, "but provides

5

a vehicle for vindicating the violation of rights created by the United States Constitution or federal law."  See Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870 (1989); Morse v. Lower Merion School Dist., 132 F.3d 902, 907 (3d Cir.1997).  Thus, in order to succeed on the § 1983 claims, Plaintiff must demonstrate that the defendants (1) were acting under color of state law, and (2) while acting as such, deprived them of a constitutional or federal right.  Id.  In this case, it is not disputed that the defendants were acting under the color of state law.  Nwegbo's § 1983 claims include allegations that his Fourth and First Amendment rights were violated.

Qualified Immunity

The doctrine of qualified immunity shields government officials "for liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Restated more precisely, "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action assessed in light of the legal rules that were clearly established' at the time it was taken."  Anderson v. Creighton, 483 U.S. 635, 639 (1987) quoting Harlow, 457 U.S. at 818-819; see also Pro v. Donatucci, 81 F.3d 1283 (3d Cir. 1996).  The availability of qualified immunity as a defense is a question of law.  Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789 (1991).

The qualified immunity analysis breaks down into two issues.  First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. If the plaintiff fails to make out a constitutional violation, the qualified

immunity inquiry is at an end and the officer is entitled to immunity.  Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002).  Once it is determined that evidence of a constitutional violation has been adduced, courts evaluating a qualified immunity claim must proceed to the second step and decide whether the constitutional right was clearly established.  Id.  In other words, the reviewing court must query whether, in the factual scenario established by the plaintiff, a reasonable officer would have understood that his actions were prohibited.  Id. at 136.  "If it would not have been clear to a reasonable officer what the law required under the facts alleged, he is entitled to qualified immunity."  Id.  If, on the other hand, the requirements of the law would have been clear, the officer must stand trial.  Id.

A.  Fourth Amendment-Malicious Prosecution, False Arrest, False Imprisonment

The absence of probable cause is required to sustain an action for malicious prosecution, and for his claims of false arrest and false imprisonment resulting from that arrest. See Johnson v. Knorr, 477 F.3d 75, 81–82 (3d Cir.2007) McNeil v. City of Easton, 694 F. Supp. 2d 375, 390 (E.D. Pa. 2010) (citing Murphy v. Bendig, 232 Fed.Appx. 150, 153 (3d Cir.2007); Pulice v. Enciso, 39 Fed.Appx. 692, 696 (3d Cir.2002); see Startzell v. City of Philadelphia, 533 F.3d 183, 203–204 (3d Cir.2008); Groman v. Township of Manalapan, 47 F.3d 628, 634–636 (3d Cir.1995)).  Defendants Pray and Reed argue that Nwegbo's claims of malicious prosecution, false arrest, and false imprisonment must all be dismissed because there was probable cause.  Defendants contend that there was probable cause to arrest Nwegbo for disorderly conduct because his conduct, which served no legitimate purpose, disrupted a public meeting.

Probable cause exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense

7

has been or is being committed by the person to be arrested." <u>Reedy v. Evanson</u>, 615 F.3d 197,

211 (3d Cir. 2010), quoting <u>Orsatti v. NJ State Police</u>, 71 F.3d 480, 483 (3d Cir. 1995).  Where

the evidence is uncontradicted the judge must determine whether probable cause exists.

However, where there are issues of material fact, a jury must be permitted to make findings upon

which the probable cause determination is to be based.  <u>Russoli v. Salisbury Tp.</u>, 126 F. Supp. 2d

821, 871 (E.D. Pa. 2000).   If probable cause exists as to any crime which was charged or even

could have been charged it would be sufficient to justify the arrest and prosecution.  <u>Kossler v.</u>

<u>Crissanti</u>, 564 F.3d 181, 193 (3d Cir. 2009).

Plaintiff was charged with disorderly conduct pursuant to 18 Pa.C.S. 5503(a)(4).  The section

states:

> Offense defined.  A person is guilty of disorderly conduct if, with intent to cause public
> inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>    (4) Creates a hazardous or physically offensive condition by any act which serves no
>    legitimate purpose of the actor.

Defendants contend that he also could have been charged with subsection (1) of the statute,

which states:

> (1) Engages in fighting or threatening, or in violent or tumultuous behavior.

  We find, however, that the facts as set forth by Plaintiff are simply not sufficient to establish

probable cause.  According to Nwegbo, he interrupted Ford while Ford was giving his statement.

He states that Ford was speaking about an issue involving some former council members, which

was the subject of ongoing litigation, and was putting the borough at risk.  <u>Id.</u> at 17.  He thought

that Ford said that if he told him to stop one more time he would stop reading it.  He testified as

follows:

> And the mayor tried to stop him, he wouldn't stop; he continued to read it.  So

that's where the argument started.  And I thought he said to me, if you tell me stop one more time, if you tell me to shut up, I'll stop reading it.  I seen (sic) probably he will come and start to punch me or something and then…

…
I believe he made a statement such tell me  -- that he was just rude, implying said, tell me to shut up.  And I said, Mr. Ford, can you shut up sand sit down.'

          At that point, he jumped out from where he was sitting with the fist (indicating) this way and lunged towards me, right around to come – I was sitting like on the other side and he was like on this side.  So he ran towards that area to attack.

Id. at 17-18.

According to Plaintiff, when Ford got up from his seat, he got past Tonette Pray and was then stopped when Carl Ewald, the solicitor, stood up and used his hands to shield Ford from coming toward Nwegbo.  Id. at 20.  Plaintiff testified that as Ford got closer to him, with only one person between them, Plaintiff stood up and went to Lt. Reed for protection.  He told Reed that Ford was trying to hurt an elected official.  Id. at 21.  He testified that Lt. Reed did not say anything, but was looking at Ford and Pray.  According to Plaintiff, Pray gave a hand signal for Ford to leave the building and Ford walked past Reed downstairs and left the building.  He states that Reed walked with him and then made a U-turn and did not leave the room.  Id. at 22.  According to Plaintiff, at that point, he was in his seat and the next thing Reed did was grab him.  Id. at 23.  Lt. Reed then came and apprehended Nwegbo and he was ultimately arrested and given a citation while he was in custody.  Ford's citation was sent in the mail.

          According to Plaintiff's version of the events, he never attempted to approach Ford or anyone else.  While it is clear that he was a part of a verbal argument that was disruptive and culminated with Ford threatening violence, the issue of whether he approached Ford is in dispute.  The citation issued in this case says that he "engaged in an argument (verbal) inside

counsel (sic) chambers with another person and began to become combative as he approached

other person and did not stop despite police demands." Exhibit 3- citation.  While such conduct

would certainly have provided probable cause, Plaintiff's version of the events are contrary to

this and are simply not sufficient.  Given the testimony of the parties, it is clear that Nwegbo's

interaction with Ford was contentious and disruptive.  The fact that Ford got up from his seat and

had to be restrained from physically assaulting Nwegbo was certainly sufficient to provide

probable cause as to Ford.  Although the argument resulted in a disruption so great that the

meeting ended and chaos broke out even in the audience, there is not sufficient undisputed

evidence for this Court to find probable cause as to Nwegbo.  A reasonable jury could find that

probable cause was lacking.  The issue of what actually happened during the argument must be

left for the jury.

### 1.  Malicious Prosecution:

To prove a claim of malicious prosecution under the Fourth Amendment[2], a plaintiff must

show:  (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his

favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted

maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff

suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal

proceeding.  Johnson v. Knorr, 477 F.3d 75, 81–82 (3d Cir.2007). "Similarly, a plaintiff pursuing

a claim based on the Pennsylvania common law tort of malicious prosecution must establish the

---

[2] Plaintiff's Complaint does not allege a Section 1983 claim for malicious prosecution under the Fourth Amendment. Rather, it includes only the state law claim (Count X).  Defendant Craddock argued that Plaintiff failed to establish seizure as a restraint of liberty.  Since this element is required only for a claim under § 1983 and not for a state law claim, we need not address whether the fact that he was handcuffed and remained handcuffed until receiving his citation was sufficient.

same first four required elements of a Fourth Amendment malicious prosecution claim; however, there is no requirement to prove a deprivation of liberty." Henderson v. City of Phila.,  853 F.Supp.2d 514, 518 (E.D.Pa.  2012), citing Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir.2000); Kossler v. Crisanti, 564 F.3d 181, 198 n. 14 (3d Cir.2009) (en banc).

Defendant Craddock argues that regardless of whether there was probable cause, the claim of malicious prosecution must be dismissed against him because he did not initiate prosecution against Nwegbo.  The citation was prepared and filed by Lt. Reed.  Defendant Craddock argues that he intervened and assisted in the arrest only after Lt. Reeed had effectuated the arrest and had nothing to do with filing the charges.  According to Craddock, Lt. Reed placed Nwegbo under arrest and after Nwegbo struggled to resist Craddock intervened.  While there is a factual dispute as to whether Plaintiff resisted arrest, even according to Plaintiff's testimony, Craddock intervened only after Reed had forced Plaintiff to the ground and Plaintiff had once again returned to his seat.  Plaintiff's dep. at 23-24.  According to Plaintiff, Craddock charged at him yelling, "they said you're under arrest."  Id. at 24:16-18.   Craddock intervened only after Reed had made the determination to arrest Plaintiff.  Nwegbo testified that Officer Craddock did not instruct any other officer to arrest him.  We agree that based on this testimony, Plaintiff cannot demonstrate the requirement that Defendant Craddock initiated a criminal prosecution and therefore, the claim of malicious prosecution against Defendant Craddock must be dismissed.

2.   False Arrest/False Imprisonment

Plaintiff also alleges both false arrest and false imprisonment.  Fourth Amendment claims for false imprisonment are similar to those for false arrest, as both are "grounded in the Fourth

11

Amendment's guarantee against unreasonable seizures." <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 636 (3d Cir.1995).  In order to state a claim for false imprisonment, a plaintiff must demonstrate unlawful detention without legal process.  <u>Wallace v. Kato</u>, 549 U.S. 384, 389, 127 S.Ct. 1091 (2006).  "False arrest and false imprisonment overlap; the former is a species of the latter." <u>Id.</u> at 388. "Where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 636 (3d Cir.1995). The proper inquiry in a claim for false arrest under §1983 is "not whether the person arrested in fact committed the crime, but whether the arresting officers had probable cause to believe the person arrested had committed the offense." <u>Dowling v. City of Phila</u>., 855 F.2d 136, 141 (3d Cir 1988).

As discussed above, considering the facts in the light most favorable to Plaintiff, we cannot find that there was probable cause.  Therefore, the issue will be left for the jury.

Defendant Officer Craddock argues that he is entitled to qualified immunity on the false arrest and false imprisonment claims because his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 818 (1981); <u>Wilson v. Russo</u>, 212 F.3d 781, 786 (3d Cir. 2000).  He asserts that he is entitled to qualified immunity because "there is no case law that would clearly impose a duty on an officer to make an initial probable cause determination when coming to the assistance of a fellow officer that initiated an arrest where the arrest has become problematic because of the actions of the arrestees."  Brief in support of motion at p. 10.  Craddock asserts that he is entitled to qualified immunity because there was no clearly established law requiring him to make an independent probable cause determination prior to coming to the assistance of

Lt. Reed.

Craddock relies on <u>Stearns v. Clarkson</u>, 615 F.3d 1278 (10th Cir. 2010), in which the Tenth Circuit held that an officer acting in reliance on the flawed conclusion of a fellow officer may be entitled to qualified immunity if the reliance was objectively reasonable. "When one officer requests that another officer assist in executing an arrest, the assisting officer is not required to second-guess the requesting officer's probable cause determination, nor is he required to independently determine that probable cause exists." <u>Stearns v. Clarkson</u>, 615 F.3d 1278 (10th Cir. 2010); <u>citing</u> <u>Baptiste v. J.C. Penney Co</u>., 147 F.3d 1252, 1260 (10th Cir. 1998) (officer called on scene to conduct search incident to arrest was entitled to qualified immunity). Although <u>Stearns</u> is a Tenth Circuit case, the Third Circuit has held that "where a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." <u>Rogers v. Powell</u> 120 F.3d 446, 455 (3d Cir. 1997). In <u>Rogers</u>, the Third Circuit extended the holdings of prior cases dealing with an officers relying on bulletins, to allow an officer to rely on oral statements of fellow officers, as long as reliance was reasonable. <u>Id.</u>

As Plaintiff argues, Craddock was present for the duration of the meeting, so there is some distinction between this case and the cases in which an officer is called to the scene as backup or after the incident has occurred and relies on the findings conveyed to him by his fellow officers. As Plaintiff states, Craddock was present for the duration of the meeting. Although he was not on duty, he was in the audience and was able to observe the situation. He was therefore able to make his own determination as to probable cause. While he intervened

13

only after Lt. Reed had attempted to arrest Nwegbo, he did so without being ordered to assist. (Craddock dep. at 58-59)  Craddock testified that he intervened on his own and once Nwegbo was on the ground, Reed asked him to hold Plaintiff down until he got handcuffs.  Id. at 60.

It is clear that Craddock assisted in effectuating the arrest only after Reed had made the decision to arrest Nwegbo.  Craddock charged at Nwegbo, yelling, "They said you're under arrest, They said you're under arrest."  Plaintiff's dep. at 24.  However, since Craddock was able to assess the situation himself, we cannot find that Craddock's reliance on Reed's allegedly flawed determination of probable cause was objectively reasonable in this case.  The fact that he assisted with the arrest does not provide him with immunity if his determination of probable cause or reliance on Reed's finding of probable cause was not reasonable.  The Fourth Amendment right requiring probable cause for arrest is clearly established.  See Gerstein v. Pugh, 95 S. Ct. 854 (1975).  There does not appear to be any law which would grant an assisting officer qualified immunity simply because he was assisting after another officer decided to arrest.  Such a requirement would limit liability to a single officer in any case.

Defendant also cites Fernandez v. Montgomery County, Md, No. 10-cv-752, 2012 WL 1664086 (D. Md. May 10, 2012), in which the court granted qualified immunity to an officer lending assistance during an arrest involving resistance.  However, unlike this case, the assisting officer in Fernandez was responding to an Officer's emergency call for assistance.  In addition, in that case it was undisputed that Plaintiff was actively physically fighting with the officers.  The Plaintiff testified that he was "fighting for [his] life."  Id.  Here, the issue of resistance or physical struggle at the time Craddock intervened is disputed.  There is no testimony that Lt. Reed was in danger at any time or needed to be protected.  Certainly, giving credit to Plaintiff's

14

testimony, there was no threat to Reed.  Since there was no clear emergency or threat and

Craddock was in a position to be able to assess the situation to make a determination as to

probable cause, we cannot grant him qualified immunity as to the claims of false arrest and false

imprisonment and will deny his motion as to these claims.

      B.  Fourth Amendment- Excessive Force and State Law-Assault and Battery

      Plaintiff seeks damages against Defendants Reed and Craddock for excessive force in

violation of his Fourth Amendment rights.  The Fourth Amendment, made applicable to the

States by the Fourteenth Amendment, Ker v. California, 374 U.S. 23, 30, 83 S. Ct. 1623, 1628

(1963), provides in pertinent part that the "right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . .."

U.S. Const., Amend. IV.   The Fourth Amendment further prohibits the use of unreasonably

excessive force when making an arrest.  Brower v. County of Inyo, 489 U.S. 593, 599, 109 S. Ct.

1378, 1382-1383 (1989).  Whether a police officer used excessive force in the course of an

investigatory stop or other "seizure" of a free citizen must be determined using a reasonableness

test, giving careful attention to the facts and circumstances of each particular case, and

recognizing that the use of some coercion necessarily inheres in the officer's right to make such

an investigatory stop  or seizure.  Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871-

72 (1989).  These facts and circumstances include "the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight."  Id. at 396.  As the United States

Supreme Court has held:

>The "reasonableness" inquiry in an excessive force case is an objective one: the
question is whether the officer['s] actions are "objectively reasonable" in light of
the facts and circumstances confronting [him], without regard to [his] underlying
intent or motivation.  An officer's evil intentions will not make a Fourth
Amendment violation out of an objectively reasonable use of force; nor will an
officer's good intentions make an objectively unreasonable use of force
constitutional.

Id. at 397.  The "'reasonableness' of a particular use of force must be judged from the perspective

of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham 490

U.S. at 396.

Plaintiff also alleges state law claims of assault and battery.  "Assault is an intentional

attempt by force to do an injury to the person of another, and a battery is committed whenever

the violence menaced in an assault is actually done, though in ever so small a degree, upon the

person." Cohen v. Lit Brothers, 70 A.2d 419, 421 (Pa. 1950).  A police officer may use such

force as is necessary under the circumstances to effectuate the arrest.  Renk v. City of Pittsburgh,

641 A.2d 289, 293 (Pa. 1994).  He may use reasonable force to prevent interference with the

exercise of his authority or the performance of his duty.  The reasonableness of the force used in

making the arrest determines whether the police officer's conduct constitutes an assault and

battery.  Id.  A police officer may be held liable for assault and battery when the force used in

making an arrest is unnecessary or excessive. Id.

According to Plaintiff's testimony, he did not attempt to attack Ford or anyone else.

Instead he asked that Lt. Reed arrest Ford for attempting to attack him.  Considering the facts in

support of Plaintiff, he never posed any physical threat as to Ford or anyone else.  It is

undisputed that Ford left the building.  At the time of his arrest, Plaintiff had returned to his seat

and certainly did not pose a threat to the safety of officers or others.  Although the officer's

16

testimony contradicts Plaintiff's testimony, Nwegbo testified that he never resisted arrest or attempted to get away.  He admits that after he was brought to the ground by Lt. Reed he got up and returned to his seat.  It was after he sat down that Officer Craddock charged him and threw him into the audience chairs and slammed him into the windowsill.  Nwegbo dep at 24.

If the jury is to accept Plaintiff's version of the events, there is no doubt that this reason would be sufficient to support a claim of excessive force and a state law claim of assault and battery.  Although an officer is permitted to use the force necessary to effectuate an arrest, if we are to accept Plaintiff's version of the facts, as we must for purposes of this motion, the claims must remain.  Given Plaintiff's testimony, we cannot grant summary judgment on the claim of excessive force or the state law claim for assault and battery.

Craddock does not seek summary judgment as to Plaintiff's excessive force claim, acknowledging that there are genuine issues of material fact.  However, Reed argues that he is entitled to qualified immunity.  Defendant Reed argues that given the circumstances at the meeting it cannot be said that he used more force than necessary. However, given Plaintiff's testimony and the genuine issues of material fact regarding whether or not he resisted arrest, we disagree.  Factual issues preclude the dismissal of this claim on summary judgment.  The Fourth Amendment right to be free from excessive force is clearly established.  Given Plaintiff's testimony and the fact that a reasonable jury could find that there was excessive force, we cannot grant qualified immunity as to Defendants Reed or Craddock on Plaintiff's claim of excessive force.

C.  First Amendment and Retaliation

In order to establish a First Amendment retaliation claim, Nwegbo must prove that his

speech was protected; that his speech was a motivating factor in the alleged retaliatory action; and  defendants may defeat such a claim if they can demonstrate that they would have taken the same adverse action in the absence of the protected speech.  Mekle v. Upper Dublin School District, 211 F.3d 782, 793 (3d Cir. 2000).

Defendants contend that Nwegbo's speech at the June 9, 2011 meeting was not protected. While Nwegbo is clearly permitted to speak on the issues, Defendants argue that once the exchange between Plaintiff and Ford escalated to provoke a breach of peace and disruption of the meeting, the speech was no longer protected.   Defendants assert that the words exchanged between Nwegbo and Ford were "fighting words" or "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace."  Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72 (1942).  According to Defendants, at least some of Nwegbo's speech at the June 9, 2011 meeting was not protected by the First Amendment.

If we are to accept Plaintiff's testimony, as we must for purposes of this motion, then we must disagree.  According to Plaintiff's testimony, he had a legitimate purpose for attempting to stop Ford from continuing to speak.  While his words provoked Ford, his testimony is that he was attempting to stop Ford from saying things that could potentially negatively impact the Borough in litigation.

Therefore, to the extent that Plaintiff can prove that he was arrested for his speech at the meeting, he may be able to prove that it was in violation of his First Amendment rights. According to Plaintiff's testimony, he did not threaten any physical violence at the meeting, but was arrested only for his words at the meeting

Plaintiff testified that while he was handcuffed in the police station, he asked Officer

18

Craddock why they did this to him and Officer Craddock told him to ask Lt. Reed.  He states that

when he asked Lt. Reed why they locked him up and left his attacker go, Lt. Reed began

laughing and said "I'm a cop.  I can do whatever I want.  I can lock you up and leave him go.  I

could say that it was dark, I couldn't see him and I can send him a citation in the mail."  (Id. at

42).  According to Nwegbo, Lt. Reed also told him "After all I did to you, I bent over for you,

why did you ask me questions regarding an incident that's going on in the council room?  Who

give you the audacity to ask me such questions?"  Plaintiff states that he also said, "When your

neighbor's son got in trouble, you called 911, I came there, I took care of it.  Still, you have the

audacity to talk to me that way in the council meeting." Id.

        If a jury is to believe this testimony it lends support to his claim that he was arrested for

his speech rather than because he posed a threat. It also lends support to his claim of malicious

prosecution, in demonstrating the fourth element, that the officers acted maliciously for a

purpose other than bringing Nwegbo to justice.  Accordingly, Plaintiff's First Amendment claim

regarding his arrest must remain.

        However, we agree with Defendants that Nwegbo cannot establish any causal connection

between his speech and retaliation since that meeting.  It is undisputed that Plaintiff continues to

serve as an elected representative of the Colwyn Borough Council and that he continues to attend

meetings.  The summary of the videotapes of the meetings from July, 2011 to December, 2012

(to which Plaintiff has not objected), demonstrates that Nwegbo has spoken on issues and

addressed the Borough and the public during the meetings.  Plaintiff admits that he continues to

serve on committees.  While he is the only member of Borough Council not to serve as a Chair

of a committee, this does not support his claim for retaliation since he was removed as

19

Committee Chair in 2010, well before the incident involved in this case.  Given the evidence as set forth by Plaintiff, there is simply nothing to support Plaintiff's claim that he has been retaliated against in violation of his First Amendment rights.

Any issue of material fact as to Plaintiff's claim that Defendant Pray has retaliated against him by limiting his speech at the meetings, has been eliminated by the summary of the video tapes of the meetings. The summary of the subsequent meetings demonstrates that Nwegbo has continued to be recognized to speak at meetings.  Although the meetings are still contentious and Pray has attempted to enforce rules to maintain some order and in an attempt to keep the meetings going, Nwegbo has certainly continued to be heard.  It is also clear that his removal as a committee chair prior to this incident was not in retaliation for his speech at the June 9, 2011 meeting.

In his response Plaintiff stipulates that summary judgment is appropriate for the First Amendment retaliation claim against Defendant Craddock.  Summary judgment must also be granted in favor of Defendant Pray as to this claim.  The claim will remain against Defendant Reed only as to Plaintiff's arrest.

D.  Conspiracy:

In Count IX of the Complaint, Plaintiff claims that Craddock and Reed conspired against him to deprive him of his civil rights.  In order to state a claim for conspiracy under § 1983, the plaintiff must demonstrate (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.  See Marchese v. Umstead, 110 F.Supp.2d 361, 371 (E.D. Pa. 2000).  The third Circuit has defined a conspiracy as "a combination of two or more persons to do a criminal act, or to do an unlawful

20

act by unlawful means or for an unlawful purpose." Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa. 1977) (citing Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974)).  To prevail on a conspiracy claim, the plaintiff must present evidence of an agreement-"the sine qua non of a conspiracy." Spencer v. Steinman, 968 F. Supp. at 1020.  "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism."  Panayotides v. Rabenold,  35 F.Supp.2d 411, 419 (E.D. Pa.1999).

Plaintiff also brings a state law claim for conspiracy.  In order to state a cause of action for civil conspiracy, "a complaint must allege (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." McKeeman v. Corestates Bank, 751 A.2d 655, 660 (Pa. 2000), citing McGuire v. Shubert, 722 A.2d 1087, 1092 (Pa. Sup. 1998).  Plaintiff must also prove malice, or " that the sole purpose of the conspiracy was to injure the plaintiffs." Morilus v. Countrywide Home Loans, Inc., 651 F. Supp.2d 292, 313 (E.D. Pa. 2008).

Nwegbo has failed to provide any evidence or support of a conspiracy between Lt. Reed and Officer Craddock.  Nwegbo has not demonstrated any facts from which we can reasonably infer that there was an agreement between the defendants to violate his Fourth Amendment rights. He has not presented any evidence of an agreement or meeting of the minds prior to the arrest or the alleged excessive force.  His claim is based on mere speculation.  When asked at his deposition if he had any evidence to support his claim, Nwegbo pointed only to the fact that Officer Craddock was present at the meeting while he was off duty.  He testified that 'police

officers that don't even live in Delaware County that are employed by boroughs do not just show up at council meeting (sic) with a gun, a loaded gun on their waist and sit in council meeting. It's very rare." Nwegbo dep at p. 171.  He testified that in his four years he had never before seen Officer Craddock at a borough Council meeting other than in uniform.  Id. at 172, 174.  When asked if he had any evidence that Lt. Reed spoke to Officer Craddock or Tonette Pray about arresting him prior to the meeting, Plaintiff testified that he does not, but that there is circumstantial evidence.

He stated, "At this point, no.  But there will be circumstantial evidence because those – Reed would do anything that Tonette Pray wants him to do to the man in power,  That's the way those guys work."  Id. at 199-200.   This speculation is not sufficient to sustain a claim for conspiracy.  Therefore, we will grant summary judgment in favor of Defendants and dismiss Nwegbo's claims for conspiracy under both section 1983 and his state law claim for conspiracy.

E.   Punitive Damages

Finally, Nwegbo seeks punitive damages resulting from the alleged violation of his Constitutional rights.  Defendants Reed and Craddock argue that Nwegbo has failed to establish support for a finding of punitive damages against them in their individual capacity.   "However, in a § 1983 claim against individual defendants, a jury may assess punitive damages if the defendant's conduct is shown to be motivated by an evil motive or intent, or when it involves reckless or callous indifference to constitutionally protected rights." Davis ex rel. Davis v. Borough of Norristown, 400 F.Supp.2d 790, 801 (E.D. Pa. 2005) (citing Brennan v. Norton, 350 F.3d 399, 428-29 (3d Cir.2003)). We will defer ruling on this issue until the close of Plaintiff's case.

IV.   <u>CONCLUSION</u>

For the reasons set forth above, I now enter the following: